504

**In re NOBLE et al.**

District Court, D. New Jersey.
June 10, 1937.

Clarence F. McGovern, of Jersey City, N. J., for petitioners.

David G. Smith, of Paterson, N. J., for Hopewell Nat. Bank.

John F. McCarthy, of Princeton, N. J., for First Nat. Bank of Princeton, N. J.

FORMAN, District Judge.

Petitioners, husband and wife, purchased a farm in 1922, consisting of 82 acres, situate in Princeton township. He and his wife, and later their growing children, farmed part of the acreage for fodder, and conducted a dairy thereon for a number of years. During this period the health of Mr. Noble declined and he is at present a victim of asthma. He purchased the property for $20,000, giving a $10,000 purchase-money mortgage. Later, in 1927, the Farm Land Bank replaced this mortgage and granted him $2,500 in excess thereof, imposing its first lien for $12,500 against the property. Subsequently, the Princeton Bank & Trust Company placed a second mortgage of about $4,000 against the property and later the Hopewell National Bank placed a third mortgage of $4,000 against the premises. Still an additional mortgage lien was entered in favor of the First National Bank of Princeton in the sum of about $5,000.

In 1933 the Farm Loan Bank foreclosed its lien in the New Jersey Court of Chancery and went to a decree. The Hopewell Bank took an assignment of this decree and acquired the lien of one of the Princeton banks. Altogether the mortgage liens amounted to about $27,000 in the aggregate.

The sheriff of Mercer county was about to sell the property under the foreclosure decree when petitioners filed their petition in this court under the recent federal legislation known as the Frazier-Lemke Act (Bankr.Act § 75, as amended), 11 U.S.C.A. § 203. The sheriff sold the premises but upon application of the petitioners an order was issued directing all interested parties to show cause why confirmation of the sale should not be restrained. The Princeton and Hopewell banks appear for the discharge of said order and move to dismiss the petition because they allege that the petition is not in good form and that the petitioners are not farmers within the meaning of the legislation above mentioned.

The petition was filed pro se in a very informal manner. It does not contain the required schedules and the motion of the banks to dismiss it would prevail for that reason alone. However, because of the fact that no conciliation commissioner has as yet been appointed by the court for Mercer county I have gone at length into the petition and the motion for its vacation, hearing affidavits upon the part of the banks and oral testimony upon the part of the debtor petitioners.

It appears, in addition to ill health, that Mr. Noble has had serious financial reverses. There are existing against him a number of unsatisfied judgments and some thousands of dollars of general creditors. It is clear that he has been progressively unsuccessful in his endeavors to farm the land which has been foreclosed. His operations finally came to a standstill in November of 1936 when he sold the remnant of his dairy herd and leased his barns for the winter until May 1, 1937. He asserts that he has some acreage in alfalfa and hay. From a letter introduced in evidence it appears that in 1936 such an operation was conducted under a government grant to aid soil productivity. He has purchased, or has under contract, some seed for the planting of corn and has hopes for realizing some money from the sale of this hay and grain. He also has hopes of

renting the farmhouse and moving to less pretentious quarters "down the road." Witnesses connected with the Farm Land Bank of the district concede that as farm land the entire farm has no greater value than $15,000. The anticipated income from the farming operations on this land, even though it amounts to the most optimistic prediction of the petitioners, would not be sufficient to support such a capitalization, not to say the aggregate of the mortgage indebtedness which amounts to nearly twice that sum.

This land is in a vicinity where people of wealth have recently purchased farms of this type and converted them into what the natives of the region term "estates." Naturally the value to such a purchaser is not based upon farm productivity. The Nobles feel that if they can "hang on" some "angel" from New York may alight upon their premises and pay them handsomely therefor. On such a basis they value the farm at $50,000. In such anticipation they have ridden through tumultuous waves of judgments and debts, holding their course for a safe harbor in the smooth waters of the "estate" market.

Since 1933 they have been indulged in repeated postponements, adjournments, and deferred plans of payment, but the rescuer from New York has failed to materialize. It is my conception that Congress passed the Frazier-Lemke Act for the purpose of rehabilitating distressed farmers as such. The only farm work accomplished on this acreage is that which Mr. Noble performs in spite of his asthmatic condition and that which his son John accomplishes during his week ends home from a New York preparatory school. Their plight is one to stir sympathy, but does not entitle them to the consideration of the legislation under whose protective wing they seek shelter. They do not hope to become rehabilitated in the occupation of farmers. Their hopes turn on the possibilities of a lucky deal in the real estate market.

The banks submit that they have a present customer who will pay a price which will permit them to save or nearly preserve their investments, but the offer is in a precarious position and delay may occasion its loss. It would be futile, in my opinion, to cause them to lose the present bid unless there is some substantial reason to believe that advantage would result to the petitioners. There is no real indication that the petitioners would be benefited. Therefore, brushing aside the technical objection, I find that the petitioners are not farmers within the meaning of the legislation and the motion of the banks must prevail that the petition be dismissed and the injunction heretofore granted restraining the confirmation of the sale will be dissolved.

An order will be taken accordingly.